Francis Edward KLIMAS *v.* STATE of Arkansas

CR 75-187                                   534 S.W. 2d 202

Opinion delivered February 17, 1976
[Supplemental opinion on Rehearing P. 309.]

*Thurman Ragar Jr.*, for appellant.

*Jim Guy Tucker*, Atty. Gen., by: *Jackson Jones*, Asst. Atty. Gen., for appellee.

JOHN A. FOGLEMAN, Justice. Francis Edward Klimas was found guilty of the burglary of the Dixie Wood Preserving Company's building near Pine Bluff and of grand larceny of property therein. He asserts three points for reversal. We find error on one point which will require either a reduction of sentence or a reversal. That point has to do with the enhancement of appellant's sentence under the Habitual Criminal Act [Ark. Stat. Ann. § 43-2328 — 30 (Repl. 1964).] Appellant contends, and we agree, that there was error in the admission of evidence of previous convictions.

After the return of the jury verdict, the state offered evidence of seven felony convictions in the form of certified copies of the records of the Department of Corrections of Missouri State Penitentiary. Admittedly these copies complied with the requirements of Ark. Stat. Ann. § 43-2330. Appellant objected to their introduction, however, because none of them showed that Klimas had the assistance of counsel at the times of his conviction. The state contended then and argues now that when court records are not used to prove a prior conviction, the state is not required to show that the accused had the assistance of counsel when the record offered is silent on the matter. The state has not favored us with any authority so holding, and we do not think that such a bypass of the constitutional principle on which the decision of *Burgett* v. *Texas*, 389 U.S. 109, 88 S. Ct. 258, 19 L. Ed. 2d 319 (1967) was based will stand muster. In *Burgett*, it was held that presuming waiver of the right to counsel from a silent record is impermissible and that the admission into evidence of a prior criminal conviction which is constitutionally infirm under the standards of *Gideon* v. *Wainwright*, 372 U.S. 335, 83 S. Ct. 792, 9 L. Ed. 2d 799, 93 ALR 2d 733 (1963) is inherently prejudicial.[1]

We first dealt with *Burgett* precepts in *Wilburn* v. *State*, 253 Ark. 608, 487 S.W. 2d 600, where the Attorney General

---

[1]The state does not suggest and we do not perceive that it can be said in this case that the error was harmless, although under other circumstances this question might be worthy of consideration.

conceded, and we agreed, that a docket entry of a judgment of conviction which was silent as to the defendant's representation by counsel and his waiver of the right to assistance of counsel was improperly admitted into evidence. Both appellant and appellee have ignored our treatment of the matter in *McConahay* v. *State,* 257 Ark. 328, 516 S.W. 2d 887. The opinion there does not disclose the nature of the documents offered to sustain the habitual criminal charge, but here again the state conceded and we held that the documents were deficient and inadmissible in evidence because they were silent concerning the defendant's representation by counsel. Nothing whatever was said about the holding being restricted to court records or to indicate that it would not apply to any record offered in evidence to show prior convictions. To clearly illustrate the inappropriateness of the argument advanced by the state, we point out that the United States Supreme Court, in two sequels to *Burgett,* has applied the *Burgett* rule to evidence of convictions other than records. In both *United States* v. *Tucker,* 404 U.S. 443, 92 S. Ct. 589, 30 L. Ed. 2d 592 (1972) and *Loper* v. *Beto,* 405 U.S. 473, 92 S. Ct. 1014, 31 L. Ed. 2d 374 (1972), the court dealt with convictions admitted by a defendant on cross-examination for impeachment purposes.

It seems clear to us that when evidence, in whatever form, of a prior conviction is offered which is silent as to representation of the defendant by counsel or his waiver of the right of assistance of counsel, the state must first lay a foundation for its admission by evidence tending to show that defendant was, in fact, represented by counsel or that he had knowingly and intelligently waived his right to the assistance of counsel.

Appellant also contends that his cross-examination of Arlie Weeks, a professed accomplice, was unduly limited by the circuit judge in that he was not permitted to show that Weeks was motivated to testify by the knowledge that the prosecuting attorney would be consulted before action would be taken upon Weeks' application for parole. It appears that after Weeks confessed this burglary and grand larceny, his parole on a previous charge was revoked. The state does not actually contend that there was no error in the court's

sustaining an objection to the question whether Weeks was aware that the prosecuting attorney is asked to make a recommendation to the parole board before a convict is paroled. It actually argues that any error in this respect was harmless. There is no doubt that the ruling in this case was erroneous and an abuse of the trial court's discretion to limit cross-examination on matters of credibility.

An accused should be accorded a wide latitude in cross-examination to impeach the credibility of a witness against him. See, *May* v. *State*, 254 Ark. 194, 492 S.W. 2d 888. The latitude of this right of cross-examination is even broader and that of the court's discretion to limit it is somewhat narrower than in other instances. *Alford* v. *United States*, 282 U.S. 687, 51 S. Ct. 218, 75 L. Ed. 624 (1930); *State* v. *Hart*, 239 N.C. 709, 80 S.E. 2d 901, 41 ALR 2d 1199 (1954); *State* v. *Williams*, 487 P. 2d 100, 6 Or. Ap. 189 (1971) cert. den. 406 U.S. 973 (1972); *Mason* v. *State*, 132 Neb. 7, 270 N.W. 661 (1937); *State* v. *Roberson*, 215 N.C. 784, 3 S.E. 2d 277 (1939). This is particularly so when the witness is, or may be found to be, an accomplice. *Boyd* v. *State*, 215 Ark. 156, 219 S.W. 2d 623; *Stone* v. *State*, 162 Ark. 154, 258 S.W. 116. See also, *State* v. *Little*, 87 Ariz. 295, 350 P. 2d 756, 86 ALR 2d 1120 (1960); Annot 62 ALR 2d 610 (1958). It is generally permissible for a defendant to show by cross-examination anything bearing on the possible bias of the testimony of a material witness. *Bethel* v. *State*, 162 Ark. 76, 257 S.W. 740; *Ringer* v. *State*, 74 Ark. 262, 85 S.W. 410; Annot. 62 ALR 2d 611 (1958). This rule applies to testimony given under expectation or hope of immunity or leniency or under the coercive effect of his detention by authorities. *Stone* v. *State*, supra; *Boyd* v. *State*, supra. See also, *Campbell* v. *State*, 169 Ark. 286, 273 S.W. 1035; *Alford* v. *U.S.*, supra. The test is the expectation of the witness and not the actuality of a promise. *State* v. *Little*, supra; *Spaeth* v. *United States*, 232 F. 2d 776, 62 ALR 2d 606 (6 Cir., 1956).

The right of a defendant to show the bias of a witness does not lie within the court's discretion. *Wright* v. *State*, 133 Ark. 16, 201 S.W. 1107. Remarks of the court in *Spaeth* are particularly applicable here. The court there said:

******** In all the circumstances, it would have been

> proper to permit careful scrutiny of Sanzo's motive for testifying against Dr. Spaeth. His testimony could well have been guided by his hope of an early parole as a reward for becoming a Government witness against appellant. It is not intended remotely to convey the impression that the United States Attorney might have promised Sanzo a recommendation for parole as a consideration for his testimony. Mere hope upon the part of Sanzo that he would be so rewarded would supply sufficient motive for his testimony against Dr. Spaeth.

Denial of cross-examination to show the possible bias or prejudice of a witness may constitute constitutional error of the first magnitude as violating the Sixth Amendment right of confrontation. *Davis* v. *Alaska,* 415 U.S. 308, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974).

Weeks admitted that he knew how the parole system in Arkansas worked, but the court sustained an objection to an inquiry whether appellant was aware that the prosecuting attorney is asked to make a recommendation to the parole board before there is a parole. After objection was made but before it was sustained, the witness answered that he did not. We find no further inquiry along this line, probably because of the unfavorale answer given by the witness. No effort was made to pursue the matter in any other fashion. Under these circumstances we agree with the state that the error was harmless.

Appellant also contends that the testimony of Weeks, who would have been an accomplice if his testimony had been believed, was not sufficiently corroborated to sustain the jury verdict. In reviewing the evidence, it must be remembered that the corroborating independent evidence need not be sufficient, in and of itself, to sustain a conviction. It is only necessary that it tend in some degree to connect the accused with the crime. *Stout* v. *State,* 249 Ark. 24, 458 S.W. 2d 42. It may be circumstantial, so long as it is substantial. *Jones* v. *State,* 254 Ark. 769, 496 S.W. 2d 423. Even though one, or a combination of several circumstances might not be sufficient, all of the circumstances when considered together may constitute a chain constituting substantial evidence ten-

ding to connect an accused with the crime charged sufficient to make a question for the jury. *King* v. *State*, 254 Ark. 509, 494 S.W. 2d 476. Any substantial evidence, even though slight and not altogether satisfactory and convincing, is sufficient to warrant submitting the question of its sufficiency to the jury. *Mankey* v. *State*, 192 Ark. 901, 96 S.W. 2d 463. Possession of recently stolen property is a proper circumstance to consider both on the charge of larceny and that of burglary, even if it be found in an automobile in which the accused is a passenger. *Thacker* v. *State*, 253 Ark. 864, 489 S.W. 2d 500; *Lee* v. *State*, 200 Ark. 964, 141 S.W. 2d 842. A conviction of two defendants of burglary and grand larceny has been sustained upon evidence that the stolen property was found in a room occupied by the two. *Lee* v. *State*, 200 Ark. 1189, 141 S.W. 2d 845.

There was evidence that the Dixie Wood Preserving Company plant had been burglarized. The production manager discovered the burglary and found that a "coke" machine and a Pepsi Cola machine had been broken into and severely damaged. A check made out to Potlatch Corporation, some walkie-talkie radios, "plus coins and stuff" out of the machines were missing. This witness identified radios which had been found in an apartment occupied by Klimas and Weeks as a part of those taken. The witness could not state the amount of money taken from the machines. Weeks testified that the two had burglarized the place and the drink machines and removed the change from them. He said that there was a total of $58 which was divided in half and that Klimas put his part in a glass jar in the apartment shared by him and Klimas.

William E. Moore, a criminal investigator for Jefferson County, went to the apartment where Klimas and Weeks lived and searched it pursuant to consent given by Weeks. He found five walkie-talkie radios and a portable one in a brown paper bag in a closet. He also found two plastic containers with nickels, dimes and quarters in them in two different chests of drawers. Klimas was present when the search was made. He made no objection to the search. One of the plastic containers was found in a chest of drawers, which was identified by Klimas as his chest. Moore said that Klimas iden-

tified the coins as his and said that he was saving them. The closet from which the radios were taken appears to have been used by both Klimas and Weeks. The chests of drawers were located in a room to which both Klimas and Weeks had access. When the search was being conducted in the presence of Klimas, Weeks told the officer that the things in the closet belonged to Klimas. There was no denial by Klimas, who was not then in custody.

Klimas relies upon *Cockrell* v. *State*, 256 Ark. 19, 505 S.W. 2d 204, and *Bright* v. *State*, 212 Ark. 852, 208 S.W. 168, as authority demonstrating the insufficiency of the evidence. But both cases may be easily distinguished. In *Cockrell*, two stolen guns were found in the defendant's automobile while it was being driven by the accomplice, who lived with the defendant and had free use of his car, especially when the defendant was working at night. There was nothing except the ownership of the car tending to connect the defendant with the larceny of the guns. In *Bright*, it was not contended that the *amount* of money found on the defendant was sufficient "to form the basis for an independent presumption of guilt," of a burglary and larceny in which the evidence indicated that as much as $6,000 had been stolen. With this factor eliminated, the court found no corroboration in the fact that defendant had a bad reputation and had been seen with the accomplices, his half-brothers, an hour or two before the burglary with which he was charged.

This case can also be distinguished from *Cook* v. *State*, 75 Ark. 540, 87 S.W. 1176, where we held that testimony that the accused had been seen with a *handful* of pennies shortly after a chewing gum slot machine had been taken from a burglarized railroad depot was not corroborative of the testimony of an accomplice who said that he and the accused had broken into the place, taken the slot machine, broken it open and divided equally the *four* pennies they found in it, because there was no other evidence that the machine had any pennies in it. Here, there was testimony that coins were taken from the machines, even though the manager was not able to say how many or how much was taken.

When we view the total circumstances consisting of the

finding of some of the property stolen in an apartment shared by the accomplice and the defendant, the uncontroverted statement of the accomplice in the presence of appellant that thte things in the closet where they were found belonged to appellant, the fact that coins were taken from the machines at the burglarized premises, and the fact that a substantial number of coins were found in a chest belonging to appellant in a container identical to that in which similar coins were found in a chest belonging to the accomplice, together with appellant's admission that the chest was his and his assertion that the coins were also, they are substantial, even though slight, corroboration of the testimony of the accomplice. They were at least sufficient to present a question for the jury as to their sufficiency. The issue of the sufficiency of the corroboration and the requirement that circumstantial evidence be inconsistent with any reasonable conclusion other than the defendant's guilt were submitted to the jury by instructions to which no objection was made.

Since we find error in the proceedings to determine appellant's sentence, we must reverse the judgment and remand the case for a new trial, unless the Attorney General, within 17 calendar days, accepts a reduction of appellant's sentence to three years, the minimum on the charges on which he was tried.

Mr. Justice Byrd would reverse on the court's sustaining the state's objection to cross-examination of the accomplice.

## Supplemental Opinion On Rehearing

### Delivered March 15, 1976

JOHN A. FOGLEMAN, Justice. The state has filed a petition for rehearing, pointing out that, in our disposition of this case, we overlooked the fact that evidence of six prior felony convictions of appellant was introduced in addition to the Missouri convictions for which an adequate foundation was not laid. In view of these unchallenged Arkansas convictions, the minimum sentence on each charge would have been 21 years, making a total minimum of 42 years on the two offenses and not 3 years as we indicated in the original opinion in this case. See Ark. Stat. Ann. §§ 41-1003, 41-3907 (Repl. 1964) and 43-2328 (Supp. 1975). Any possible prejudice to appellant would be removed by reduction of the sentence to 42 years. See *Wilburn* v. *State*, 253 Ark. 608, 487 S.W. 2d 600; *McConahay* v. *State*, 257 Ark. 328, 516 S.W. 2d 887.

We accordingly revise the disposition indicated in the original opinion wherein the Attorney General was given the option of a new trial or accepting a reduction of the sentence to 3 years. Instead, the case will be remanded for a new trial, unless the Attorney General, within 17 calendar days, accepts a reduction of appellant's sentence to 42 years.